**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| IN RE: | CASE NO. 19-01384 (ESL) |
| CARLOS HORACIO ORTIZ COLON; MARIBEL RODRIGUEZ RIOS | CHAPTER 11 |
| Debtor | |
| IN RE: | CASE NO. 19-01386 (ESL) |
| VAQUERÍA ORTIZ RODRÍGUEZ, INC. | CHAPTER 11 |
| Debtor | ADMINISTRATIVELY CONSOLIDATED |

**REPLY TO ORIL'S *OBJECTION TO MOTIONS REQUESTING ENTRY OF ORDER AUTHORIZING LEASE OF MILK QUOTA***
(Related Docket No. 69)

TO THE HONORABLE COURT:

COMES NOW creditor Condado 4, LLC ("Condado"), through the undersigned counsel, and respectfully prays and states as follows:

Background

1. On July 8, 2019, the Debtors filed two motions to authorize the lease of 10,000 quarts ("cuartillos") of milk quota (the "*Motions*", Docket Nos. 66 and 67).

2. On July 11, 2019, the Puerto Rico Milk Industry Regulatory Office ("ORIL") filed an *Objection* to the *Motions* (the "*Objection*", Docket No. 69). In short, ORIL alleges:

   (a) "there has been no showing of the exceptional circumstances under Puerto Rico law that would permit leases of quota that exceed thrice the legal limit" 5,000 quarts of milk quota (Id., p. 2);

   (b) "[a]lthough Debtors' motions state that the income generated by the proposed leases would be used to pay down debt, they make no showing of the exceptional circumstances of the law" (Id., p. 2);

   (c) "ORIL's records show that from January to December 2018 Debtors' dairy farm's production has been relatively compliant with the quality parameters for Grade A milk… Debtors even obtained a commendation from the Administrator that dispensed with the license renewal fee" (Id., pp. 2-3);

(d) "An exception to increase production and/or income is [] unwarranted since Debtors have enough quota to increase production and increase income and still be compensated within the highest liquidation levels"; and

(e) the Monthly Operating Reports "demonstrate that the current income levels allow the Debtors to operate the business, make payments on their obligations to creditors (be it by direct pay or by cessions), pay for personal expenses and have a positive balance at the end of the month. See Dkt. #s 44 and 45. Although Dkt. #45 shows a small negative balance, it is largely due to a large insurance premium payment" (Id., p. 3).

3. Condado hereby responds to ORIL's *Objection*.

Applicable Law and Discussion

*(A) ORIL's Act and Regulations allow the lease of the milk quotas in excess of 5,000 quarts*

4. Section 12 of Puerto Rico Milk Industry Production Quota Transactions Registry Act (the "ORIL Act"), 5 L.P.R.A. §§ 1126-1139, provides in pertinent part that:

> Any milk producer may lease a portion or the total amount of his quota up to a maximum of five thousand (5,000) quarts of milk every fourteen (14) days, provided that both the lessor and the lessee possess a valid license to operate a first class dairy issued by the Office.
> …
> Leasing quotas of more than five thousand (5,000) quarts of milk every fourteen (14) days is hereby prohibited, except in those cases where the dairy production is affected by any catastrophic event or by any cattle disease.

5 L.P.R.A. § 1136.

5. This statute must be jointly construed with ORIL's companion Regulation No. 7 to Establish the Norms and Rules that Govern the Operation of the Quota Transaction Registry of the Milk Industry ("Reglamento Número 7 de la Oficina de la Reglamentación de la Industria Lechera para Establecer las Normas y Reglas que Regirán el Funcionamiento del Registro de Transacciones de Cuotas de Producción de la Industria Lechera"), Regulation No. 6669 dated August 14, 2003 ("Regulation No. 7").

6. Regulation No. 7 was subsequently amended in 2015 through Regulation No. 8660 to "adapt the provisions of the Regulation to the current conditions of the milk industry". Regulation No. 8660 dated November 12, 2015 ("Regulation No. 6660").

7. As of today, Regulation No. 7, as amended, currently reads as follows:

-2-

> The lease in excess of 5,000 quarts will only be allowed when an **unforeseen event** as defined by this Regulation occurs **or in active cases before the U.S. Bankruptcy Court**…
>
> …
>
> In the case of dairy farmers acting pursuant to the provisions of the U.S. Bankruptcy Code… They must make reference to the Order of the U.S. Bankruptcy Code **and establish that [the lease] is requested to comply with the Payment Plan provided by such forum**.

Regulation No. 8660, § 7(B), ¶¶ 1, 3, 8 (emphasis and underline added, translation provided).

*(B)  Cause exists for the lease in excess of 5,000 quarts for "unforeseen events"*

8. Section 4(F) of Regulation No. 8660 defines "unforeseen event[s]" as "unpredictable events that are beyond the dairy farmer's control whose effect is of such magnitude and impact as to affect the regular operations of the dairy farm" (translation provided).

9. There are "unforeseen events" in the instant case that warrant the lease in excess of 5,000 quarts. The Debtors' cows recently became sick, which resulted in the decommission of multiple quarts of milk which severely impacted the Debtors' finances. As evidence, Vaquería Ortiz Rodríguez, Inc. ("Vaquería Ortiz") will file with the Court an unsworn statement under penalty of perjury within the next five (5) days in support hereof. This triggers the exception in 5 L.P.R.A. § 1136, as expanded through Regulation No. 8660, § 7(B), ¶ 3.

10. In addition, the monthly operating report for the month of July 2019 clearly evidences the impact that the foregoing unforeseen event had in Vaquería Ortiz Rodríguez because its income was reduced to a deficit of -$112.88. See Bankr. Case No. 19-01386 Docket No. 87.

11. Accordingly, this Court may grant the lease of milk quota in excess of 5,000 quarts pursuant to the foregoing unforeseen events. See id.

*(C)  Cause exists for the lease in excess of 5,000 quarts under the Bankruptcy Exception in Regulation No. 8660, § 7(B)*

12. Sections 7(B), ¶¶ 3 and 8, of Regulation No. 8660 contemplate a bankruptcy exception (the "Bankruptcy Exception") allowing the lease of quotas in excess of 5,000 quarts. It

expressly acknowledges federal bankruptcy policy and the need to foment proper means for dairy farmers to successfully reorganize in bankruptcy proceedings.

13. "There is ample authority for the proposition that a bankruptcy court may, in the proper circumstances, enjoin a federal administrative agency. [The milk quota] constitute[s] property of the estate, and consequently [is] subject to this court's jurisdiction." In re FiberTower Network Services Corp., 482 B.R. 169, 184 (Bankr. N.D. Tex. 2012).

14. Bankruptcy Courts have yielded strict compliance of state law regulations to foster federal bankruptcy reorganization policies.

15. For instance, the rationale in In re FiberTower Network Services Corp., 482 B.R. 169 (Bankr. N.D. Tex. 2012), is applicable in this case:

> As demonstrated above, both the Licenses and Debtors' right to seek review of a termination decision constitute property of the estate, and consequently are subject to this court's jurisdiction. **Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate**. Thus, although the Communications Act grants the authority to regulate spectrum licenses solely to the Commission, once the holder of a license regulated by the Commission declares bankruptcy, **the commencement of that bankruptcy case results in shared jurisdiction** over the licenses between Defendant and the bankruptcy court: the Commission exercises jurisdiction by virtue of its statutorily-granted regulatory authority, while the bankruptcy court exercises jurisdiction pursuant to its control over property of the estate. Interpreting the U.S. Code to provide for shared jurisdiction between the bankruptcy court and Defendant in such circumstances is the best way to give effect to the congressional grants of authority to both the Commission and the bankruptcy court… **While the court will defer to Defendant's regulatory objectives and expertise, Code section 105 nonetheless permits the court to issue any order necessary to preserve the property of Debtors' bankruptcy estate**, including enjoining Defendant from redistributing the Licenses before its orders become final and non-appealable.

In re FiberTower Network Services Corp., 482 B.R. at 184–85 (citations omitted) (citing Celotex Corp. v. Edwards, 514 U.S. 300, 308 (1995)) (emphasis added).

16. In a similar vein, the U.S. Bankruptcy Court for the Southern District of New York has stated the following:

> The principles of conflict preemption preclude application of the challenged state dealer amendments to deny the debtor and the purchaser the benefits of a judicially approved rejection of certain dealer franchise agreements in accordance with the Bankruptcy Code. Based on the record before me, the plaintiffs have established

that **compliance with the state dealer amendments would frustrate and undermine lawful actions taken pursuant to the Bankruptcy Code**.

In re Old Carco LLC, 470 B.R. 688, 704 (S.D.N.Y. 2012) (emphasis added).

17. While federal courts usually recognize that agencies have "a unique understanding of the statutes they administer and an attendant ability to make informed determinations about how state requirements may pose an 'obstacle to the accomplishment and execution of the full purposes and objectives of Congress,'" when there is a potential clash of state and federal policies (further discussed below) Courts do not defer to agency positions, whether formal or informal, because bankruptcy determinations involve matters more within the expertise of bankruptcy courts. See e.g. In re Bate, 454 B.R. 869, 878 (Bankr. M.D. Fla. 2011), quoting Bankwest Inc. v. Baker, 411 F.3d 1289, 1300-01 (11th Cir. 2005) (citing Smiley v. Citibank (South Dakota), 517 U.S. 735, 744 (1996)); Nat'l Min. Ass'n v. Sec'y of Labor, 153 F.3d 1264, 1266 (11th Cir. 1998) (finding that courts do not need to give deference to issues beyond an agency's expertise).

18. ORIL's *Objection* hinges on the fact that the monthly operating reports "demonstrate that the current income levels allow the Debtors to operate the business, make payments on their obligations to creditors […], pay for personal expenses and have a positive balance at the end of the month." *Objection*, Docket No. 69, pp. 3-4. But that is not an accurate factual statement. ORIL discussed the above captioned Debtors' finances as a single unit, as if the cases had been substantially consolidated. But the captioned cases are only administratively consolidated (Docket No. 54). "[J]oint administration or administrative consolidation is merely a procedural device which enables a court to efficiently oversee multiple estates." In re Las Torres Development, LLC, 413 B.R. 687, 693 (Bankr. S.D. Tex. 2009). "[J]oint administration does not create substantive rights." In re Cooper, 2003 WL 1965711, at *2 (Bankr. N.D. Iowa 2003) (underline added). Consequently there are two separate bankruptcy estates and the milk quota only belongs to the bankruptcy estate of Vaquería Ortiz Rodriguez Inc., not of the individual Debtors'. See Bankr. Case No. 19-01386, *Schedule A*, Docket No. 33, p. 4.

19. Moreover, the recent Monthly Operating Reports, which include significantly reduced payments to secured creditor Condado, evidence that the Corporate Dairy Farm's production has been decreasing. The ending balance for the months of May, June, and July 2019 are the following: $8,506.78; $1,096.75; and -$112.88. See Bankr. Case No. 19-01386 Dockets No. 83, 85, 87, respectively. Adequate protection payments to Condado have been made in the following reduced amounts for those same months: $13,178.66; $8,028.78; and $3,137.76. See Bankr. Case No. 19-01386 Dockets Nos. 83, p. 5; 85, p. 5; 87. p. 5.

20. Said with the utmost respect, the statements in ORIL's *Objection*, besides not being accurate, fall beyond the scope of its expertise and instead seem to adjudicate the Debtors' finances and reorganization efforts. The latter falls within the expertise and jurisdiction of this Honorable Court.

21. In Puerto Rico, decisions and interpretations by state administrative agencies like ORIL are generally given deference when they interpret their own specialized statutes and regulations. See Camacho Torres v. AAFET, 168 D.P.R. 66, 91 (2006); Vélez Rodríguez v. A.R.P.E., 167 D.P.R. 684, 694 (2006); Rivera Concepción v. A.R.P.E., 152 D.P.R. 116, 122-123 (2000); Assoc. Ins. Agencies, Inc. v. Comisionado de Seguros, 144 D.P.R. 425, 436 (1997).

22. And even so, such deference is neither automatic or absolute. Under Puerto Rico law, judicial deference to agencies is only sustained when the agency's decision is based on substantial evidence and is reasonably related to the policy it intends to promulgate within its delegated powers. See Comisionado de Seguros de Puerto Rico v. Corporación para la Defensa del Poseedor de Licencia de Armas de Puerto Rico, Inc., 2019 T.S.P.R. 116 (deference to an administrative decision cannot be sustained if it is not based in substantial evidence or the agency has acted unreasonably or in contrast to the law); T-JAC, Inc. v. Caguas Centrum Limited, 148 D.P.R. 70, 80 (1999); 3 L.P.R.A. § 2175. Furthermore, agencies may only exert their powers when its actions and decisions are indispensable to promulgate its primary delegated powers. See Oficina de Asuntos Monopolísticos del Departamento de Justicia v. Jiménez Galarza, 199

D.P.R. 293, 309 (2017); DACO v. Servidores Públicos Unidos de P.R. (AFSCME), 185 D.P.R. 1, 12 (2012); Raimundi v. Productora, 162 D.P.R. 215, 224 (2004).

23. As stated by administrative law commentator Tomás Ramón Fernández,

> sin justificación bastante, no hay arbitrio legítimo, sino arbitrariedad pura y simple. Un mero porque sí o porque yo lo digo o porque yo así lo creo o lo siento no es una resolución fundada en Derecho.

Tomás Ramón Fernández, Del arbitrio y de la arbitrariedad judicial, Ed. Iustel, Madrid (2005), pg. 122.

24. "The fact that a state restriction may be intended to serve consumer protection purposes is not sufficient to avoid preemption if the restriction stands as an obstacle to or significantly interferes with the exercise of a federal right." Ins. Comm'r of P.R. v. Doral Ins. Agency, Inc., 2006 U.S. Dist. LEXIS 80333, *11-12, 2006 WL 3196472, at *4 (D.P.R. 2006). "**However wise or needful [a state's] policy may be… it must give way to the contrary federal policy**." Franklin National Bank of Franklin Square v. New York, 347 U.S. 373, 378-379 (1954) (emphasis added); Wells Fargo Bank of Tex. N.A. v. James, 321 F.3d 488, 491 n.3 (5th Cir. 2003); Association of Banks in Ins., Inc. v. Duryee, 270 F.3d 397, 404 (6th Cir. 2001).

25. As stated in In re Gretter Autoland, Inc., 2015 Bankr. LEXIS 2734, 2015 WL 4915802 (Bankr. S.D. Iowa 20015):

> While … many states believe that their public policy should provide special protections for the economic interest of local car dealerships, **in the area of federal bankruptcy law those remedies run counter to the federal policy of bankruptcy reorganization and are therefore preempted**.

In re Gretter Autoland, Inc., 2015 Bankr. LEXIS 2734, at *15 (emphasis added), quoting In re American Suzuki Motor Corp, 494 B.R. 466, 477 (Bankr. C.D. Cal. 2013).

26. As discussed above, ORIL's bankruptcy assessment in the *Objection* of the Debtor's finances and reorganization only rests within this Court's jurisdiction and expertise.

27. While we acknowledge that Regulation 8660, § 7(b)(3), allows ORIL to evaluate whether to allow or not lease of quotas in excess of 5,000 quarts to farmers who are in bankruptcy proceedings in a case by case basis and according to its own discretion, ORIL has not placed

this Court in a position to uphold such discretion provision within this bankruptcy context. Thus, ORIL's position in the *Objection* seems arbitrary, too broad and vague and, *ergo*, *ultra vires*, especially when it stands in the way of a legitimate federal policy to promote bankruptcy reorganization.

28. Also, ORIL's position in the instant case is at odds with § 7(b)(8) of Regulation 8660, which expressly affords the Bankruptcy Court with sufficient authority to grant an order authorizing a lease in excess of 5,000 quarts, which ORIL is then called to implement to comply with a confirmed plan. If the Court does not allow such lease in the instant case at this juncture, there will most likely not be a confirmed plan of reorganization, which would defeat purpose of § 7(B)(8), *supra.*

29. In other words, contrary to ORIL's statements, this Honorable Court has sufficient authority under the Bankruptcy Exception in Regulation No. 7, as amended, and pursuant to express provisions of the Bankruptcy Code stated below, to grant the *Motions* and allow leases in excess of 5,000 quarts. The Court also has authority to grant the *Motions* pursuant to the Bankruptcy Exception because if Vaquería Ortiz Rodriguez, Inc. is not allowed to lease its milk quota in excess of 5,000 quarts, the Debtors will not be able to file respective feasible plans of reorganization.

30. Condado has a claims in both of the captioned cases in the secured amount of $3,665,050.87 (Bankr. Case No. 19-01384 Proof of Claim No.10; Bankr. Case No. 19-01386 Proof of Claim No. 7). While Condado has been accepting reduced payments within the last weeks considering the Debtors' circumstances, they cannot be sustained much longer in light of the substantial amount of Condado's claim.

31. ORIL has not placed the Court in a position to deny the requested lease in excess of 5,000 quarts. Conversely, denying the lease in excess of 5,000 quarts will have a significant adverse impact on the Debtors that will most likely impede its reorganization efforts. In the balance of harms and equities, the scale should tilt in favor of federal reorganization policy and

promote the Debtors' reorganization.

32. Section 363(b) of the Bankruptcy Code affords bankruptcy jurisdiction to grant the lease of property of the bankruptcy estate. Such section poses no limitation to the lease of property of the bankruptcy estate. It is further enhanced by Section 105(a) of the Bankruptcy Court, which provides that "[the court may issue **any order**, process, or judgment that is **necessary or appropriate to carry out the provisions of this title**." 11 U.S.C. § 105(a) (emphasis added).

33. In conclusion, this Honorable Court may approve the lease of the milk quota because: (a) unforeseen circumstances are present in this case; (b) Bankruptcy Exception. State policy, if any (as none have been averred or demonstrated) must yield to the more pressing federal reorganization policies. The milk quota is property of the bankruptcy estate, which results in the Court having the authority to approve the leases sought in the *Motions* pursuant to 11 U.S.C. §§ 363(b) and 105(a).

<u>Prayer for Relief</u>

WHEREFORE, Condado respectfully prays the Court to grant the *Motions* (Docket Nos. 66 and 67) and deny ORIL's *Objection* (Docket No. 69).

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, on this 20th day of August, 2019.

Certificate of Service
We hereby certify that on this same date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all CM/ECF participants in this case.



Attorneys for Condado
PO Box 195168
San Juan, PR 00919-5168
Tel.: (787) 766-7000
Fax: (787) 766-7001

*/s/ Sonia E. Colón*
SONIA E. COLÓN
USDC-PR No. 213809
scolon@ferraiuoli.com

*/s/ Gustavo A. Chico-Barris*
GUSTAVO A. CHICO-BARRIS
USDC-PR No. 224205
gchico@ferraiuoli.com

*/s/ Camille N. Somoza*
CAMILLE N. SOMOZA
USDC-PR No. 302908
csomoza@ferraiuoli.com